IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE T. SHAW,                          )
                                         )
            Plaintiff,                   )
                                         )
        v.                               ) Civil Action No. 07-1183
                                         )
PITTSBURGH BOARD OF PUBLIC               )
EDUCATION, JANICE MATTHEW,               )
individually,                            )
                                         )
            Defendants.                  )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                   January 12, 2009

This is an action in civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff, George T. Shaw, claims that defendants, the Pittsburgh Board of Public Education and Dr. Janice Matthew, deprived him of his right to equal protection on the basis of gender under the Fourteenth Amendment to the United States Constitution. Plaintiff, a certified occupational therapy assistant for defendant Pittsburgh Board of Public Education (the Board), alleges that Dr. Matthew, a former Program Administrator for the Board, treated him differently than similarly situated female employees on the basis of his gender. Plaintiff seeks compensatory and punitive damages.

Defendants have filed a motion for summary judgment under Fed. R. Civ. P. 56(c) arguing that plaintiff lacks the evidence needed to prove his claim [doc. no. 22]. Defendants also

contend that they had legitimate, non-discriminatory reasons for their employment decisions regarding plaintiff. For the reasons set forth below, defendants' motion will be granted.

I. FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise indicated. We construe all other facts in the light most favorable to plaintiff, the non-moving party.

On November 17, 1995, the Board hired plaintiff, a male, as a certified occupational therapy assistant (COTA). The function of a COTA is twofold: (1) to implement the occupational therapy goals of the supervising occupational therapist; and (2) to act as an educational aide under the supervision of the applicable classroom teacher and building principal. The COTA position is part of the Board's Early Intervention program. Dr. Matthew, a female, was the Program Administrator for the Early Intervention program from 1993 to June, 2008.

Plaintiff asserts that between December, 1996 and the spring of 2006, Dr. Matthew harassed and humiliated him by calling him her "token male." Specifically, plaintiff testified that on seven different occasions, Dr. Matthew used this term to describe him. Additionally, after giving plaintiff permission to take time off in 2003, Dr. Matthew stated that plaintiff would "owe her big time for this, boy." Dr. Matthew disputes that she made these

2

pejorative statements regarding plaintiff's gender.

Plaintiff also asserts that, between 2003 and 2006, he suffered other harms because of Dr. Matthew. First, on August 26, 2003, plaintiff and Dr. Matthew had a meeting wherein plaintiff requested that he be assigned to work at the Fort Pitt site for the 2003-2004 school year. The Fort Pitt site, however, required a COTA with autism training. Plaintiff does not have autism training. The Fort Pitt position was, therefore, assigned to a female COTA with autism training and plaintiff was assigned to several other sites. Plaintiff alleges that, during a conversation about this assignment, Dr. Matthew stated that "tokens get what she gives them, and [plaintiff] was her token." Dr. Matthew denies making this statement.

The following year, plaintiff requested and was granted a leave of absence for the 2004-2005 school year. He testified that he wanted this leave because his stepfather was dying, because he wanted to spend time with his daughter, and because he wanted to get away from Dr. Matthew.

Plaintiff returned to work for the 2005-2006 school year. In a September 1, 2005 meeting regarding assignments, plaintiff told Dr. Matthew and others that he had a heart condition. After a review of the composition of the Board classrooms and a review of staffing ratios based upon the functioning levels of the children in the classrooms, Dr. Matthew

3

assigned plaintiff to the Dilworth site. Although this was plaintiff's first assignment at Dilworth, he was unhappy with the assignment because he had heard from other employees that it was a "stressful" location.

In January or February, 2006, plaintiff attended a meeting at the Pittsburgh Federation of Teachers building. Approximately 150 people attended this meeting, the majority of which were female. At this meeting, Dr. Matthew put a sign on the men's bathroom on the first floor indicating that it was to be used as a ladies bathroom.

Also in January, 2006, plaintiff began missing time at Dilworth to attend physical therapy appointments related to a knee injury. Dilworth Principal Robert O'Keefe informed Dr. Matthew of plaintiff's repeated absences in February, 2006. In response to a February 27, 2006 fact-finding meeting regarding plaintiff's absence issues, Dr. Matthew prepared and gave plaintiff a March 1, 2006 memorandum reiterating the items discussed at the meeting and listing the procedures that he must follow regarding his absences. On April 11, 2006, Dr. Matthew prepared a second memorandum which identified ten instances of absenteeism since February 27, 2006 and the proper procedure to follow when arranging additional absences. A meeting was scheduled for April 12, 2006 to discuss the Board's attendance policy. On the morning of April 12, 2006, however, plaintiff left work and went to the hospital because he had heart

4

palpitations, chest pains, and numbness. Plaintiff later testified that the absences referenced in the April 11, 2006 memo were due to stress caused by the defendants.

Plaintiff has not returned to work for the Board since April 12, 2006. He requested and was granted a medical leave of absence from the Board for the rest of the 2006-2007 school year. On July 2, 2008, he received correspondence from the Board indicating that he is on an unapproved leave of absence and requesting that he resign. Plaintiff states that he cannot return to the COTA position because, even though Dr. Matthew retired and no longer works for the Board, he knows that "there's[sic] people left behind by Dr. Matthew that will still carry out what she did, and I am not going to be subjected to that." [Doc. No. 25 at ¶ 106]. Plaintiff, however, has not met or worked for Dr. Matthew's replacement.

It is undisputed that Dr. Matthew consistently gave plaintiff satisfactory evaluations and consulted with plaintiff's immediate supervisors regarding his performance. Morever, while employed for the Board, plaintiff was not subjected to any disciplinary action by Dr. Matthew.

Plaintiff filed this action on August 29, 2007, alleging that defendants discriminated against him on the basis of his gender in violation of his rights under the Fourteenth Amendment to the United States Constitution.

5

For the reasons discussed below, plaintiff's claim will be dismissed.

II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. <u>Id</u>. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but

only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of his claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here

7

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in his favor.

III. DISCUSSION

Plaintiff asserts that he was discriminated against because he is a man and brings claims of gender discrimination under section 1983, alleging violations of his Fourteenth Amendment Equal Protection rights. The Equal Protection clause requires that "all persons similarly circumstanced shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216 (1982) (quoting F.S. Royster Guano Co. v. Va., 253 U.S. 412, 415 (1920)).[1]

---

[1]

This jurisdiction applies the same legal analysis to discrimination claims brought under Title VII and equal protection claims brought under section 1983. King v. City of New Kensington, No. 06-1015, 2008 WL 4492503, at *17 (W.D. Pa. Sept. 30, 2008) (explaining that "[t]he analysis with respect to gender discrimination under Title VII ... is dispositive of plaintiff's gender-based discrimination claim under Section 1983"); Hoechstetter v. City of Pittsburgh, 248 F.Supp.2d 407, 409 n.1, 412 n.4 (W.D. Pa. 2003)(collectively analyzing Title VII and section 1983 discrimination claims). We

8

A. Reverse Discrimination Claim

Claims for gender-based discrimination brought under the Equal Protection Clause are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997) (using the McDonnell Douglas standard to analyze claims of discrimination under the Equal Protection clause). Under this framework, the plaintiff must first establish a prima facie case of gender discrimination. See McDonnell Douglas, 411 U.S. at 802. Although neither party has referred to plaintiff's claim as one of "reverse discrimination," the Court of Appeals for the Third Circuit has stated that, to establish a prima facie case of reverse gender discrimination, a plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999). If the plaintiff makes this prima facie showing, the defendant must establish a legitimate, non-discriminatory reason for the rejection/termination. Id. at 166. The plaintiff must then demonstrate that the defendant's proffered reason was a

---

note that section 1983 discrimination claims have a more stringent "intent" requirement that Title VII claims, however, "the failure to meet the prima facie case under Title VII is fatal to a section 1983 claim." Maull v. Div. of State Police, 141 F.Supp.2d 463, 478 n.6 (D. Del. 2001).

pretext for discrimination. Id.

Based on the evidence of record, we conclude that no reasonable jury could find that defendants discriminated against plaintiff because of his gender. Plaintiff's evidence of gender discrimination consists of allegations that defendants: (1) assigned the Fort Pitt site to a female COTA instead of him, (2) later assigned him to Dilworth which he perceived to be an undesirable site, (3) clarified the procedures that he must follow with regard to absence issues, (4) made comments regarding his gender, and (5) changed a men's bathroom to a ladies bathroom on one occasion.[2]

Regarding plaintiff's first allegation of discrimination, the fact that a woman received a more desirable assignment instead of a man does not, alone, establish gender discrimination. See Paich v. Nike, Inc., No. 06-1442, 2008 WL 696915, at *8 (W.D. Pa. Mar. 12, 2008). Especially, where, as here, the Fort Pitt assignment was given to a qualified employee and plaintiff was not similarly qualified. Any allegation that Dr.

---

[2] We note that the statute of limitations for a section 1983 claim is two years. Sameric Corp. of Delaware v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). Plaintiff filed this action on August 29, 2007. Accordingly, plaintiff's allegation regarding the assignment to Fort Pitt (September 1, 2003) is untimely. Nevertheless, we conclude that even if this claim were not untimely, plaintiff failed to establish a prima facie case of gender discrimination with regard to this allegation.

Matthew did not assign him the Fort Pitt site because he is a man amounts to no more than speculation or conjecture, which is insufficient to defeat a motion for summary judgement. Similarly, there is no evidence that the Dilworth site was a less desirable location, that Dr. Matthew's assigned him to this location because he is a man, or that this assignment altered plaintiff's compensation, terms, conditions or privileges of employment. Hence, there is nothing in the record showing that plaintiff was treated less favorably based on his gender with regard to these allegations.

Additionally, the record does not show any disfavorable treatment towards plaintiff regarding his absence issues in 2006. Rather, the record shows that Dr. Matthew conducted a meeting with plaintiff to clarify the procedures that he must take before leaving the workplace for various appointments and sent him two memos regarding the Board's policies. It is undisputed that plaintiff did not have any objections to the absence procedures discussed in the meeting and described in one of the memos. Because the meeting and memos simply clarified the Board's procedures regarding absenteeism, and because the record is devoid of evidence showing that defendants disciplined plaintiff regarding his absences or treated any other employee differently regarding these policies, we do not see any evidence of less favorable treatment towards plaintiff because of his gender.

As to Dr. Matthew's alleged comments that plaintiff is a "token male" and a "boy", a reasonable jury could not conclude that these nine comments made over the course of ten years are sufficient evidence from which to conclude that the alleged adverse actions made during the course of plaintiff's employment were gender motivated. Neither could a jury reasonably conclude that the fact that Dr. Matthew switched a men's bathroom sign to a ladies bathroom sign show that Dr. Matthew's employment decisions were gender motivated. In fact, the record establishes that, to the contrary, Dr. Matthew consistently gave plaintiff satisfactory evaluations and consulted with plaintiff's immediate supervisors regarding his performance. Morever, while employed for the Board, plaintiff was not subjected to any disciplinary action by Dr. Matthew. As such, plaintiff has failed to set forth sufficient evidence to support a prima facie case.

Even were we to find that plaintiff had presented adequate evidence in support of his prima facia case, defendants have articulated legitimate non-discriminatory reasons for the employment decisions at issue. Defendants explain that:(1) Dr. Matthew did not assign plaintiff to the Fort Pitt site because he was unqualified; (2) Dr. Matthew assigned plaintiff to Dilworth after a review of the composition of the Board classrooms and a review of staffing ratios based upon the functioning levels of the children in the classrooms; and (3) Dr. Matthew clarified the

12

Board's procedures regarding absenteeism to plaintiff because he was taking multiple absences without following the required procedures. The evidence of record provides ample support for defendant's position.

Plaintiff has presented only conjecture and assumptions, no evidence, to support his claim that he was purposefully denied choice assignments and otherwise treated unfairly. Furthermore, he has presented no evidence of inconsistencies, incoherencies, or contradictions in defendants' proffered legitimate reasons for its actions such that a reasonable trier of fact could infer that gender discrimination was the real motivation behind defendants' actions.

B. Hostile Work Environment

While it is unclear whether a plaintiff may bring a hostile work environment claim under section 1983 in this jurisdiction, it is clear that plaintiff's claim would fail even if a hostile work environment claim was permitted to proceed. See Pollock v. City of Phila., No. 06-4089, 2008 WL 3457043, at *8 (E.D. Pa. Aug. 8, 2008) (explaining that the Court of Appeals for the Third Circuit "has not addressed the specific question of whether a hostile work environment claim may be asserted under § 1983" but noting that numerous circuits have all reached the conclusion that "proving the existence of a hostile work environment is a means of establishing an equal protection

13

violation"). Plaintiff cannot establish, at least, the second element of this cause of action.

To prevail on a hostile work environment claim, plaintiff must show that: (1) he suffered intentional discrimination because of his sex; (2) the discrimination was severe or pervasive;[3] (3) the discrimination detrimentally affected him; (4) a reasonable person would have been detrimentally affected by such discrimination; and (5) the existence of respondent superior liability. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (listing the elements needed to prove a hostile work environment in a Title VII case).

In determining whether the gender-based discrimination was severe or pervasive, we must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23

---

[3] While the Court of Appeals for the Third Circuit in Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999), stated that discrimination must be "pervasive and regular," the Supreme Court has since clarified that the discrimination must instead be "severe or pervasive" to constitute a hostile work environment. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001). The Third Circuit recently adopted the Supreme Court's standard. Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 458 U.S. 53, 68 (2006).

(1993).

Plaintiff claims that Dr. Matthew repeatedly harassed him by: (1) calling him a "token male" on seven occasions over a ten year period; (2) calling him "boy" on one occasion in 2003; and (3) putting sign on the men's bathroom door indicating that it was to be used as a ladies' bathroom at a conference in 2006. Assuming these allegations are true, they are insufficient evidence of severe or pervasive discrimination sufficient to create a hostile work environment. "Occasional insults, teasing, or episodic instances of ridicule are not enough" to be severe and pervasive. See Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 458 U.S. 53, 68 (2006). While we do not condone statements and actions such as those alleged to have been made by Dr. Matthew, we find that they do not rise to the level of severity needed to prove a hostile work environment. They were not "extreme [enough] to amount to a change in the terms and conditions of employment." Caver v. City of Trenton, 420 F.3d 243, 262 (citation and internal quotation marks omitted).

Moreover, these incidents lack the frequency necessary to constitute a hostile work environment, even if plaintiff only had "'rare' one-on-one encounters" with Dr. Matthew. [Doc. No. 26 at 2-3]. At best, plaintiff has alleged nine instances of gender-based harassment over a period of ten years. The frequency of this

15

alleged discrimination is insufficient. Theriault v. Dollar Gen., No. 07-227, 2008 WL 2184977, at *7 (W.D. Pa. May 22, 2008) (finding six incidents of unwelcome comments over a three month period to "fall[] far short of the applicable standard"); Calloway v. E.I. DuPont de Nemours and Co., No. 98-669, 2000 WL 1251909, at *6 (D. Del. Aug. 8, 2000) (characterizing over a dozen alleged incidents of "unwelcome conduct and disparaging utterances" made over a period of two months "sporadic"); Cooper-Nicholas v. City of Chester, Pa., No. 95-6493, 1997 WL 799443, at *3 (E.D. Pa. Dec. 30, 1997) (finding that eight "unprofessional, offensive, and callow" comments made over nineteen months "cannot be considered frequent or chronic").

Based on this record, no reasonable juror could find that plaintiff has established that the alleged harassment and discrimination was severe or pervasive as necessary to prove a claim for a hostile work environment. As such, we must enter summary judgment in favor of defendants on plaintiff's section 1983 hostile work environment claim.

### C. Constructive Discharge

Plaintiff seemingly also brings a constructive discharge claim under section 1983. In his complaint, plaintiff states that "[t]he actions of Matthew made it impossible for [plaintiff] to continue to work; he became ill and has been unable to return to work for fear that Matthew would continue to harass

him." [Doc. No. 2].

To establish a claim for constructive discharge, a plaintiff must show that "'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984)) (Title VII claim). The test for constructive discharge is objective: whether a reasonable person under similar circumstances would have felt compelled to resign. Pa. State Police v. Suders, 542 U.S. 129, 141 (2004) (Title VII claim). A claim for constructive discharge requires something more than a claim for a hostile work environment. Specifically, "[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006) (citation omitted).

As discussed, supra, plaintiff has failed to put forth evidence sufficient to support a claim for a hostile work environment. As such, plaintiff as a matter of law also fails to state a claim for constructive discharge. Moreover, by any objective standard of reasonableness, plaintiff's nine alleged instances of gender-based discrimination over a period of ten years, none of which were physically threatening or accompanied by

17

a diminution in salary or other marked lessening of the quality of plaintiff's working conditions, are insufficient evidence of a constructive discharge.[4] We must, therefore, enter summary judgment in defendants' favor on plaintiff's section 1983 constructive discharge claim.

IV. CONCLUSION

For the foregoing reasons, summary judgment will be entered in defendants' favor. An appropriate order follows.

---

[4] We also note that the source of the alleged discrimination, Dr. Matthew, retired in June, 2008. Despite Dr. Matthew's retirement, however, plaintiff still contends that he cannot return to work for the Board even though he has never met or worked with Dr. Matthew's replacement.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE T. SHAW,)
)
Plaintiff,)
)
v.) Civil Action No. 07-1183
)
PITTSBURGH BOARD OF PUBLIC)
EDUCATION, JANICE MATTHEW,)
individually,)
)
Defendants.)

ORDER

AND NOW this 12th day of January, 2009, IT IS HEREBY ORDERED that defendants' motion for summary judgment [doc. no. 22] is GRANTED.

Judgment shall be entered in defendants favor.

The Clerk of Courts is directed to mark this matter as closed forthwith.

BY THE COURT:

cc: All Counsel of Record